[No. 49155–1. En Banc. June 30, 1983.]

PATRICIA J. PIMENTEL, *Respondent,* v. ROUNDUP
COMPANY, *Petitioner.*

*Brooks & Larson, P.S.,* by *Terry A. Brooks* and *Philip A. Lamb,* for petitioner.

*J. Michael Koch* and *Kevin P. Moran,* for respondent.

*Robert C. Keating* on behalf of Washington Association of Defense Counsel, amicus curiae for petitioner.

*Bryan P. Harnetiaux* and *Robert H. Whaley* on behalf of Washington Trial Lawyers Association, amici curiae for respondent.

PEARSON, J.—Defendant Roundup Company (d/b/a Fred Meyer Store) appeals a decision of the Court of Appeals reversing a defense verdict in an action for injuries caused when a paint can fell on plaintiff's foot.

The case presents two issues. The first issue is whether plaintiff, in order to establish liability, must show that the operator of a self–service style store had actual or constructive notice of the specific unsafe condition in the store which caused plaintiff's injury. We hold that where the operating procedures of any store are such that unreasonably dangerous conditions are continuous or reasonably foreseeable, there is no need to prove actual or constructive notice of such conditions in order to establish liability for injuries caused by them. The second issue is whether, under CR 26(b)(4) and CR 32(a)(3)(B), if a party chooses not to use one of his experts as a witness at trial, and the expert lives more than 20 miles from the location of the trial, the opposing party may use as evidence that expert's deposition taken prior to trial. We hold that CR 32(a)(3)(B) authorizes such use of an expert's deposition in this case.

The action before us arose out of injuries suffered by Patricia J. Pimentel in a Fred Meyer Store operated by

defendant in Yakima. At approximately 4 p.m. on September 16, 1978, Mr. and Mrs. Pimentel stopped at the Yakima Fred Meyer Store. Inside the store they happened upon a magazine rack displaying books about home improvements. While standing in front of the rack perusing these books, Mrs. Pimentel was struck on the foot by a can of paint. The can had apparently fallen from a shelf beneath the magazine rack. Neither Mr. nor Mrs. Pimentel had noticed the can before the incident. The can was one of three or four 2–gallon cans of paint which had been placed on the base deck of the magazine rack by a store employee around noon on September 16.

In preparation for the trial, plaintiff retained two expert witnesses. The magazine racks, which had been rearranged after plaintiff's injury, were reconstructed by store employees in June 1980. This reconstruction was available for a month, but neither of plaintiff's experts inspected it.

Trial began in late June 1980. The critical issue, as far as this appeal is concerned, was the cause of the paint can's descent onto plaintiff's foot. This issue turned, in part, on the extent to which the can overhung the shelf. Defendant acknowledged that the can overhung the shelf. A store employee testified that, at approximately 3 p.m. on the day of the incident, he observed the can overhanging about 1 1/2 to 2 inches. Mr. Pimentel, on the other hand, testified that according to his measurements of the shelf after the incident, the can was overhanging 3 3/16 inches. Plaintiff attempted to establish the significance of the extent of the overhang by publishing the deposition of an expert, Mr. C. V. Smith. In moving for publication, counsel explained that Mr. Smith testified in his deposition that when the overhang reached 3 3/8 inches the can would be extremely unstable and the slightest vibration might overbalance it.

Mr. Smith had been retained by defendant as a possible expert witness and had inspected the reconstructed magazine rack and made still photographs and high speed films. Plaintiff deposed Mr. Smith in the week preceding the trial. Subsequently, defendant decided not to call him as a wit-

ness.

The trial court denied the motion to use Mr. Smith's deposition in evidence. The court relied on *Crenna v. Ford Motor Co.,* 12 Wn. App. 824, 532 P.2d 290 (1975) in holding that CR 26(b)(4)(B) prohibited the use by plaintiff of defendant's expert testimony at trial in the absence of exceptional circumstances.

Other testimony relevant to defendant's liability in the record before this court indicates that defendant store had a policy of keeping all containers well back on shelves and avoiding overhangs greater than 1 inch. The store was officially inspected for unsafe conditions before opening every morning. Thereafter, during the day, no employee was specifically assigned to inspect the store, but all employees were instructed to be alert for dangerous conditions.

The trial court instructed the jury that it must find actual or constructive notice of a dangerous condition in order to impose liability on defendant. This instruction was based on the decision of this court in *Morton v. Lee,* 75 Wn.2d 393, 450 P.2d 957 (1969). The court refused plaintiff's proposed instruction 5, based on *Ciminski v. Finn Corp.,* 13 Wn. App. 815, 537 P.2d 850 (1975), which would not require the jury to find actual or constructive notice of the specific hazard causing the injury.

The jury returned a verdict for defendant. Plaintiff appealed, challenging the rejection of proposed instruction 5, and the refusal to admit the deposition of C. V. Smith. The Court of Appeals held that the instruction requiring actual or constructive notice was error and that the rule in *Ciminski* applied to this case. Further, the Court of Appeals held that the trial court erred in excluding the deposition of C. V. Smith.

On appeal before this court, defendant first challenges the Court of Appeals conclusion that the trial court's instruction 16 to the jury was improper. Instruction 16 stated:

The owner of a department store, such as the defendant in this case, owes to a person who has an express or

implied invitation to come upon the premises in connection with that business, a duty to exercise ordinary care for that person's safety.

In order to support a finding of negligence, a temporary unsafe condition on the premises must either have been brought to the actual attention of the defendant or its employees, or it must have existed for a sufficient length of time and under such circumstances that the defendant or its employees should have discovered it in the exercise of ordinary care.

The Court of Appeals remanded for a new trial using plaintiff's proposed instruction 5 instead of instruction 16. Plaintiff's proposed instruction 5 states:

The owner or operator of a self–service establishment must exercise reasonable care in protecting his business invitees against foreseeable risks. The owner or operator of such a self–service establishment has actual notice that his self–service mode of operation creates certain risks of harm to his customers. Since a self–service operation involves the reasonable probability that these risks will occur, these risks are foreseeable. Thus, it is not necessary for the Plaintiff to show actual or constructive notice of the specific hazard causing injury. It therefore is your task to determine whether the proprietor has taken all reasonable precautions necessary to protect his invitees from these foreseeable risks, and in making this determination you may consider the following factors:

(a) The nature of his business

(b) The nature of his customers

(c) The standards adopted to display his merchandise

(d) The housekeeping procedures which he has instituted to discover and remove conditions which may cause injuries

(e) Whether there is a system of regular inspection of display areas where merchandise might be unsafely stacked by his employees, or handled and unsafely placed by other patrons

(f) Such other facts and circumstances revealed by the evidence having a bearing on the question of reasonable protection.

Defendant argues that the Court of Appeals erred in concluding that it was not necessary for plaintiff to show that defendant had actual or constructive notice of the spe-

cific hazard that caused the injury.

It has long been settled in this state that for the possessor of land to be liable to invitees for the unsafe condition of his land, he must have actual or constructive notice of that unsafe condition.

> [W]here the negligence of a storekeeper or restaurateur is predicated upon his failure to keep his premises in a reasonably safe condition, it must be shown that the condition has either been brought to his notice or has existed for such time as would have afforded him sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger.

*Smith v. Manning's, Inc.,* 13 Wn.2d 573, 580, 126 P.2d 44 (1942).

The most recent expression of the rule by this court is *Morton v. Lee,* 75 Wn.2d at 393. There this court approved an instruction identical to instruction 16, given in the present case. In *Morton,* the plaintiff slipped on an apricot which had fallen from a display case at the entrance to the defendant's grocery store. The plaintiff's husband had noticed the apricot on the walk 5 minutes before the fall. The principal issue before the court was whether there was sufficient evidence to establish that the defendant had constructive notice of the dangerous condition caused by the apricot. The defendant argued that 5 minutes as a matter of law was insufficient to constitute constructive notice. This court held that the length of time the apricot had been seen to be on the walk was not dispositive. The jury could infer from other facts, in particular the "housekeeping procedures and practices" of the defendant, that the required care had not been exercised. *Morton,* 75 Wn.2d at 397–98.

Although the jury was permitted to infer from circumstantial evidence that the defendant had constructive notice of the dangerous condition, *Morton* stands clearly for the propositions that either actual or constructive notice must be established, and that the burden of establishing

such notice rests on the plaintiff.

In a case subsequent to *Morton,* however, the Court of Appeals decided that the notice requirement was satisfied as a matter of law because of the nature of the defendant's business. *Ciminski v. Finn Corp.,* 13 Wn. App. 815, 537 P.2d 850, *review denied,* 86 Wn.2d 1002 (1975).

*Ciminski,* like *Morton,* was a slip and fall case. Plaintiff had come to grief on a damp spot on the floor in the serving line of a cafeteria–style restaurant. The defendant was awarded summary judgment of dismissal. The Court of Appeals reversed, holding that plaintiff had created a genuine issue of fact as to whether the defendant had taken reasonable precautions for her safety. The court decided that the requirement of notice was satisfied as a matter of law because the defendant was the owner of a self–service establishment.

[A]n owner of a self–service establishment has actual notice that his mode of operation creates certain risks of harm to his customers. Since a self–service operation involves the reasonable probability that these risks will occur, these risks are foreseeable. Thus, it is not necessary to show actual or constructive notice of the specific hazard causing injury, and it becomes the task of the jury to determine whether the proprietor has taken all reasonable precautions necessary to protect his invitees from these foreseeable risks.

*Ciminski,* 13 Wn. App. at 820–21.

The Court of Appeals concluded that the evidence presented by plaintiff on summary judgment created an issue as to whether the defendant had taken reasonable precautions for her safety. The court pointed specifically to evidence that there tended to be spills in the area where plaintiff fell, and the floor was sometimes greasy.

The issue in the present case is whether, as was held in *Ciminski,* defendant's method of doing business establishes notice of risk of harm to defendant's customers. Plaintiff and amicus on behalf of Washington State Trial Lawyers Association, argue, and the court below held, that the *Ciminski* rule applies to all self–service operations. The

rationale for such a holding is explained by the Court of Appeals as being that "a business that chooses to adopt the self–service merchandising technique which allows for lower overhead and greater profits, is in a better position to accept the risks involved". *Pimentel v. Roundup Co.,* 32 Wn. App. 647, 651–52, 649 P.2d 135 (1982). Defendant, on the other hand, argues that *Ciminski* should be limited to its facts and not applied to all retailers who could be characterized as "self–service operators". Amicus on behalf of Washington Association of Defense Counsel also urges that *Ciminski* be limited to "food self–service operations".

Courts in other jurisdictions have taken a variety of approaches in fashioning rules to determine liability of a storekeeper for injuries occurring on his premises. *See* Annot., *Liability for Injury to Customer or Other Invitee in Store by Falling of Displayed, Stored, or Piled Objects,* 38 A.L.R.3d 363 (1971); Annot., *Store or Business Premises Slip–and–Fall: Modern Status of Rules Requiring Showing of Notice of Proprietor of Transitory Interior Condition Allegedly Causing Plaintiff's Fall,* 85 A.L.R.3d 1000 (1978).

The predominant theme running through these cases appears to be that modern techniques of merchandising necessitate some modification of the traditional rules of liability. The cases differ, however, in the extent of their modifications of the traditional rules. At least three different approaches may be isolated.

The first is the most radical. Under this approach, when the plaintiff proves a substantial risk of injury in the method of doing business, the burden is shifted to defendant to disprove negligence. There is no need, under this approach, for the plaintiff to establish actual or constructive notice of the specific unsafe condition causing the injury.

The rule in Louisiana, one of the states following this approach, is explained in *Johnson v. Insurance Co. of N. Am.,* 360 So. 2d 818, 819 (La. 1978).

When a customer in a self–service store proves injury resulting from a premise hazard, the burden shifts to the

store operator to exculpate himself from the presumption of fault thereby arising and to establish his own freedom from fault. . . . [A] premise hazard is a condition of the premises or of the store operation that results in an unreasonable risk of harm to customers under the circumstances.

The court held in *Johnson* on facts similar to those before this court that a premise hazard had not been established where stacked cans fell on the plaintiff's leg. New Jersey applies a similar rule. *Wollerman v. Grand Union Stores, Inc.,* 47 N.J. 426, 221 A.2d 513 (1966). In New Jersey, as in Louisiana, the burden is shifted to the defendant when a business is conducted in a manner which creates a substantial risk of injury. In *Wollerman,* the rule was stated thus:

[W]here a substantial risk of injury is implicit in the manner in which a business is conducted, and on the total scene it is fairly probable that the operator is responsible either in creating the hazard or permitting it to arise or to continue, it would be unjust to saddle the plaintiff with the burden of isolating the precise failure. The situation being peculiarly in the defendant's hands, it is fair to call upon the defendant to explain, if he wishes to avoid an inference by the trier of the facts that the fault probably was his.

47 N.J. at 430.

The second approach is more moderate in that it does not shift the burden of disproving negligence to the defendant. It does, however, eliminate the requirement that the plaintiff establish actual or constructive notice of a specific unsafe condition. The rationale for this rule was explained in *Jasko v. F.W. Woolworth Co.,* 177 Colo. 418, 420–21, 494 P.2d 839 (1972).

The basic notice requirement springs from the thought that a dangerous condition, when it occurs, is somewhat out of the ordinary. . . . In such a situation the storekeeper is allowed a reasonable time, under the circumstances, to discover and correct the condition, unless it is the direct result of his (or his employees') acts. However, when the operating methods of a proprietor are such that

dangerous conditions are continuous or easily foreseeable, the logical basis for the notice requirement dissolves. Then, actual or constructive notice of the specific condition need not be proved.

The third approach requires neither shifting of the burden of proof nor elimination of the notice requirement. Instead, it seeks to recognize the special problems associated with self–service retailing by concentrating on the concept of constructive notice. Rather than requiring direct testimony as to the length of time the unsafe condition has existed, courts which follow this approach recognize that constructive notice may be established by inference from circumstantial evidence. *Strack v. Great Atl. & Pac. Tea Co.*, 35 Wis. 2d 51, 150 N.W.2d 361 (1967); *Steinhorst v. H.C. Prange Co.*, 48 Wis. 2d 679, 180 N.W.2d 525 (1970). The court in *Strack* said:

> While we do not go so far as to change the burden of proof, we think that in circumstances where there is a reasonable probability that an unsafe condition will occur because of the nature of the business and the manner in which it is conducted, then constructive knowledge of the existence of such an unsafe condition may be charged to the operator and such constructive notice does not depend upon proof of an extended period of time within which a shop owner might have received knowledge of the condition in fact.

35 Wis. 2d at 57–58.

The difference between the second and third approaches is more semantic than real. Although the second approach eliminates the constructive notice requirement while the third approach retains it, there is no functional difference between the two approaches. Under the second approach, the requirement of showing constructive notice is eliminated if "dangerous conditions are continuous or easily foreseeable". *Jasko v. F.W. Woolworth Co.*, 177 Colo. at 421. Under the third approach, the requirement of constructive notice may be satisfied by showing "a reasonable probability that an unsafe condition will occur". *Strack*, 35 Wis. 2d at 57–58. Under both approaches, these elements

may be established by the operating methods of the proprietor and the nature of his business. The retention of the concept of constructive notice, therefore, adds nothing to the test actually applied to determine liability. The second approach consequently appears preferable to the third approach.

The second approach is also preferable to the first approach. The first approach substantially modifies established principles by shifting the burden of proof to the defendant. We see no reason to depart from traditional burdens of proof in cases of this type.

■ Accordingly, the second approach is the rule we now adopt. This does not change the general rule governing liability for failure to maintain premises in a reasonably safe condition: the unsafe condition must either be caused by the proprietor or his employees, or the proprietor must have actual or constructive notice of the unsafe condition. Such notice need not be shown, however, when the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable. This exception merely eliminates the need for establishing notice and does not shift the burden to the defendant to disprove negligence. The plaintiff must still prove that defendant failed to take reasonable care to prevent the injury.

This analysis modifies our holding in *Morton* which assumed that either actual or constructive notice must be established in every such case. Where the existence of unsafe conditions is reasonably foreseeable, it will now be unnecessary to establish the length of time for which the particular unsafe condition existed.

A similar result was reached by the Court of Appeals in *Ciminski v. Finn Corp.,* 13 Wn. App. 815, 537 P.2d 850 (1975). Our decision in the present case differs from *Ciminski* in one important respect, however. The *Ciminski* decision contains language which suggests that the requirement of showing notice is eliminated as a matter of law for all self-service establishments. 13 Wn. App. at 820–21. This

is not the conclusion we reach under the analysis adopted here; the requirement of showing notice will be eliminated only if the particular self–service operation of the defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable.

■ It now remains for us to apply this analysis to determine the appropriate disposition of the case before us. Neither instruction 16 nor proposed instruction 5 accurately reflects the rule which we now decide applies in this case: instruction 16 did not permit plaintiff to eliminate the need for notice by showing that the existence of unsafe conditions was reasonably foreseeable; proposed instruction 5 asserted that actual notice was established because defendant operated a self–service establishment. In these circumstances, the most appropriate course is to remand for a new trial in order that the jury may be instructed according to the rule articulated in this opinion. Since plaintiff has sought and obtained a revision of the rule most recently decided by this court in *Morton v. Lee,* 75 Wn.2d 393, 450 P.2d 957 (1969), the fact that her proposed instruction in the trial court, based upon *Ciminski v. Finn Corp., supra,* did not precisely anticipate the exact form of the revision does not prevent submission of the issue to the jury at a new trial under an appropriate instruction. *Memel v. Reimer,* 85 Wn.2d 685, 690, 538 P.2d 517 (1975).

The second issue before us is whether the Court of Appeals was correct in its conclusion that the trial court erred in excluding the deposition of Mr. C. V. Smith.

Plaintiffs sought to have the deposition admitted into evidence pursuant to CR 32(a)(3)(B), which provides:

> The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds . . . (B) that the witness resides . . . more than 20 miles from the place of trial . . .

It is not disputed that Mr. Smith resided more than 20 miles from Yakima.

Defendant opposed admission of the deposition, relying on *Crenna v. Ford Motor Co.,* 12 Wn. App. 824, 532 P.2d

290, *review denied,* 85 Wn.2d 1011 (1975). There, the plaintiffs brought an action against Ford Motor Company after their Ford truck went out of control and struck an abutment. Ford sought to subpoena an expert consulted by the plaintiffs, but whose deposition had not been taken. The trial court denied access to the expert, basing its ruling on CR 26(b)(4)(B):

> A party may discover facts known or opinions held by an expert who is not expected to be called as a witness at trial, only . . . upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

This ruling was upheld by the Court of Appeals, which concluded that although the rule was directed to discovery, its purpose carried over into the trial. *Crenna,* 12 Wn. App. at 828.

■ In the present case, the Court of Appeals distinguished *Crenna* and held that CR 26(b)(4)(B) was inapplicable. The court noted that defendant had stipulated to use of the deposition for all purposes allowed by the civil rules. Accordingly, the Court of Appeals reasoned, defendant waived the protection of CR 26(b)(4)(B) and the deposition was admissible under CR 32.

We agree with the Court of Appeals that Mr. Smith's deposition was clearly admissible under CR 32(a)(3)(B), and its exclusion by the trial court constituted an abuse of discretion.

The Court of Appeals is affirmed and the case remanded for a new trial in accordance with this opinion.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, and DIMMICK, JJ., concur.