# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DARCY L. JOHNSON, | No. 51414-1-II |
| Respondent, | |
| v. | |
| STATE OF WASHINGTON LIQUOR AND CANNABIS BOARD, | UNPUBLISHED OPINION ON REMAND |
| Appellant. | |

LEE, C.J. — This case is before us on remand from our Supreme Court. After holding that the reasonable foreseeability exception to the notice requirement for premises liability applied in this case, our Supreme Court remanded for consideration of remaining issues including "whether the judgment as a matter of law should have been granted on the ground that Johnson failed to provide evidence of an unreasonably dangerous condition." *Johnson v. Liquor and Cannabis Board*, 197 Wn.2d 605, 621-22, 486 P.3d 125 (2021). Because there is no evidence that an unreasonably dangerous condition actually existed, we hold that the trial court erred by denying the State's motion for judgment as a matter of law. Therefore, we reverse and remand the case to the trial court to be dismissed.

## FACTS

On August 20, 2014, Johnson filed a complaint for damages against the State. Johnson's complaint alleged that, on June 18, 2011, she was injured after slipping and falling on an allegedly

wet floor when she entered a state-owner liquor store. The State filed an answer to Johnson's complaint.

Johnson's jury trial began on September 18, 2017. At trial, Jay Smiley, Steve Pallas, and Johnson testified regarding the events surrounding Johnson's slip and fall.

On June 18, 2011, Smiley was the lead clerk of the liquor store. Smiley had worked at the liquor store for approximately three years. On the morning of June 18, Smiley opened the liquor store between 9:00 and 10:00 AM. Smiley did not remember the ground being wet when he arrived at the store, and he testified that he believed it began raining approximately 15 minutes before Johnson entered the store. As a store employee, Smiley was supposed to put out a "'slippery when wet'" sign when it begins raining. Verbatim Report of Proceedings (VRP) (Sept. 18, 2017) at 90. However, he had not put it out yet because he was busy with other customers at the store. Smiley was at the register when Johnson entered the store, and he described the incident as follows:

> It was out of the corner of my eye kind of thing. I noticed a couple come in. I was helping somebody else at the register, and then it was kind of one of those things you just kind of catch, and then turn your head and she was on the ground.

VRP (Sept. 18, 2017) at 91.

After Johnson fell, Smiley placed the "slippery when wet" sign on the floor, but did not see any water on the floor. Smiley also did not have to mop the floor.

Smiley was not aware of any condition inside the store that would necessitate placing the warning sign. And before Johnson fell no other customers reported water on the floor, complained about the floor being slippery, or slipped inside the store. Smiley did not personally observe any water on the entryway floor. Prior to Johnson's fall, nobody else had fallen in the store.

Pallas was Johnson's boyfriend at the time of the fall. On the morning of June 18, 2011, after going to some garage sales, Pallas and Johnson went to the liquor store. It was approximately 11:30 AM. Pallas remembered that it had been raining all morning.

Pallas parked in front of the liquor store, and he and Johnson entered the store. Pallas testified:

> I remember walking in the store, across the mat. And I remember taking one step, with my first foot off the mat, I went to slip. And I turned around to tell her to be care—and I didn't even get the full word "careful" out, and [Johnson] went down.

VRP (Sept. 18, 2017) at 148. Pallas also testified that both the parking lot and the sidewalk were wet when they walked up to the liquor store, but he "never personally saw water on the floor" where Johnson fell. VRP (Sept. 19, 2017) at 174.

Johnson also testified that it was raining the morning of June 18. Johnson remembered it being wet at all the garage sales she and Pallas went to that morning. Around 11:30 that morning, Johnson and Pallas stopped at the liquor store. Johnson described her fall:

> We got out of the truck and walked across the front entrance of the store, walked into the store. [Pallas] was in front of me not – just like a normal length you would walk behind somebody. I was just looking straight ahead. [Pallas] turned, and by that time I had fallen down. I was on the ground already. He helped me up a little bit later.

VRP (Sept. 20, 2017) at 384. Johnson stated that the outside of her pant leg, which was on the ground, was wet. Johnson did not notice any water on the floor prior to her falling. After she fell, Johnson saw some water on the floor, and she assumed that the water had been tracked in from outside. Johnson had no idea how long there had been water on the floor. And Johnson admitted the water could have come from her own shoes or Pallas's shoes.

3

No. 51414-1-II

After Johnson concluded the presentation of her case, the State moved for judgment as a matter of law. The State argued that it was entitled to judgment as a matter of law because Johnson had not presented any evidence that the State had actual or constructive notice of water on the floor or any dangerous condition inside the store. The trial court denied the State's motion for judgment as a matter of law.

The jury found that the State was negligent and that the State's negligence was the proximate cause of Johnson's injuries and damages. The State filed a motion for judgment notwithstanding the verdict. As one of the grounds for its motion, the State asserted, "The failure to grant judgment as a matter of law." Clerk's Papers at 541. The trial court denied the motion for judgment notwithstanding the verdict.

The trial court entered judgment in favor of Johnson, awarding Johnson $2,305,000.00 based on the jury's verdict. The trial court also awarded Johnson statutory attorney fees and costs.

The State appealed. In an unpublished opinion, this court held that the trial court erred by denying the State's motion for judgment as a matter of law because there was no evidence of actual or constructive notice of an unreasonably dangerous condition in the store. *Johnson v. Liquor and -Cannabis Board*, No. 51414-1-II, slip op. at 7-8 (Wash. Ct. App. Sept. 4, 2019) (unpublished),[1] *reversed by Johnson*, 197 Wn.2d at 622. This court also rejected expansion of the "self-service" exception to notice. *Id*. at 7.

Our Supreme Court reversed, holding that the self-service exception to the traditional notice requirement was no longer limited to self-service areas of a store. *Johnson*, 197 Wn.2d at

---

[1] https://www.courts.wa.gov/opinions/pdf/D2%2051414-1-II%20Unpublished%20Opinion.pdf

4

618. Instead, the Supreme Court explained, "Our precedent has made the exception from *Pimentel* into a general rule that an invitee may prove notice with evidence that the 'nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable.'" *Id.* (quoting *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 49, 666 P.2d 888 (1983)). The Supreme Court also held that tracking water into the entryway of a store is "inherent in a store's mode of operation," and, therefore, the existence of a potentially unsafe condition was reasonably foreseeable. *Id*. at 621.

However, the court explained:

> This conclusion does not end the case. As noted above, the Court of Appeals did not resolve all the State's assignments of error. Indeed, the Court of Appeals did not reach the issue of whether the judgment as a matter of law should have been granted on the ground that Johnson failed to provide evidence of an unreasonably dangerous condition. *Johnson*, No. 51414-1-II, slip op. at 5-6. These issues may be taken up again at the Court of Appeals upon remand.

*Id*. at 621-22. Following remand from our Supreme Court, we ordered the parties to file supplemental briefing on the issue of whether there was evidence of an unreasonably dangerous condition.

## ANALYSIS

Johnson argues that there was evidence of an unreasonably dangerous condition in the store because a "slippery when wet" warning sign had to be put out when it was raining, Pallas slipped when he entered the store, and there was circumstantial evidence of a more than ordinary amount of water on the floor. We disagree.

In *Charlton v. Toys "R" Us—Delaware, Inc.*, Division Three of this court outlined over 70 years of case law establishing that a wet floor is not, without more, an unreasonably dangerous

condition. 158 Wn. App. 906, 913-14, 246 P.3d 199 (2010). Instead, to establish negligence, the plaintiff must prove that the floor presents an unreasonable risk of harm when wet. *Id.* at 915. The court explained:

> Ms. Charlton complains that in dismissing her claim, the trial court erroneously held that a wet floor is never a dangerous condition, as a matter of law, and contends that this position is "absurd." Br. of Appellant at 7, 9. But Ms. Charlton has it backwards—the trial court did not hold that water on a floor is *never* a dangerous condition; it rejected her position that a wet floor is *always* a dangerous condition, and that she was therefore excused from presenting evidence of an unreasonable risk created by this particular wet floor. She failed to present any evidence that the floor in the entryway of the Toys R Us store presented an unreasonable risk of harm when wet. For that reason alone, summary judgment was proper.

*Charlton*, 158 Wn. App. at 915 (emphasis in original).

Further, in *Brant v. Market Basket Stores, Inc.*, our supreme court reiterated, "'A wet cement surface does not create a condition dangerous to pedestrians. It is a most common condition, and one readily noticed by the most casual glance.'" 72 Wn.2d 446, 450, 433 P.2d 863 (1967) (quoting *Shumaker v. Charada Investment Co.*, 183 Wash. 521, 530-31, 49 P.2d 44 (1935)). Something more must be shown to establish that the floor is dangerously slippery. *Id.* at 448-49, 451.

Here, the "slippery when wet" sign is not evidence of an unreasonably dangerous condition. As *Brant* recognizes, wet floors are a common condition. *Id.* at 450. It is common knowledge that wet floors are slippery. Rain may cause pedestrians to track in water causing the floor to become wet and slippery, but this does not prove that the wet floor was so slippery that it created an unreasonably dangerous condition. Nor does it prove that the floor actually was wet and slippery when Johnson entered the liquor store and fell.

6

Further, the fact that Pallas slipped does not establish that the floor posed an unreasonably dangerous condition.  Although Pallas testified that he slipped, he testified that he "never personally saw water on the floor" when he entered.  VRP (Sept. 19, 2017) at 174.  Pallas' testimony does not establish that the floor was even wet before Johnson fell in store because he did not see any water on the floor.  And Pallas' testimony does not establish anything about the floor or its properties that would establish that the floor was unreasonably slippery when it was wet.

Finally, there is absolutely no evidence that there was *any* water on the floor when Johnson fell, let alone that there was an extraordinary, uncommon, or unreasonable amount of water on the floor.  Smiley did not see any water on the entryway floor.  Pallas never saw any water on the floor when he entered.  Johnson did not see any water on the floor before she fell; she only saw water on the floor after she fell, and she admitted that the water may have come from her shoes or Pallas' shoes.  Johnson has not shown that there was any water on the floor when she fell; thus, there is no evidence to show that there was any, let alone an extraordinary amount of, water on the floor.

Here, Johnson has shown, at best, that it was raining when she entered the liquor store and she slipped and fell.  She has provided no evidence that there was actually water on the floor when she fell.  She has presented no evidence establishing there was anything about the floor that would cause it to be unreasonably dangerous when it was wet.  And she has failed to establish that there was an extraordinary or uncommon amount of water on the floor that would create an unreasonably dangerous condition.  As the courts have repeatedly stated, a wet floor alone is not an unreasonably dangerous condition.  *See Charlton*, 158 Wn. App. at 913-14.  Johnson has proven nothing more than she slipped on a floor.  She has not proven that an unreasonably dangerous condition existed.

7

No. 51414-1-II

Therefore, the trial court erred by denying the State's motion for judgment as a matter of law. Accordingly, we reverse the trial court's judgment in favor of Johnson, and we remand the case to the trial court to dismiss the case.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, C.J.

We concur:

Maxa, J.

Cruser, J.

8